GRB USAO 2013R00895

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Criminal Number: JFM-14-0364 |
| v. | (Mail Fraud, 18 U.S.C. § 1341) |
| **SALEH STEVENS,**<br>**Defendant.** | |

### INFORMATION

### COUNT ONE

The United States Attorney for the District of Maryland charges that:

### INTRODUCTION

At all times relevant to this Information:

1. Defendant **SALEH STEVENS** ("**STEVENS**") resided in Owings Mills, Maryland.

2. **STEVENS** was an attorney licensed to practice in Maryland, and from September 2011 through November 2013 was employed as a senior claims adjuster and bond claim attorney at The Hanover Insurance Company ("Hanover"). **STEVENS** worked at the company's Towson, Maryland regional office.

3. In this position, **STEVENS** was responsible for reviewing and managing claims related to surety bonds. These bonds were generally for construction projects. Hanover also hired outside Certified Public Accounting ("CPA") firms to assist with claims processing. These CPA firms employed accountants and engineers to assist Hanover manage and resolve claims.

4. Beginning in approximately December, 2011, **STEVENS** began to embezzle funds from Hanover's special surety workout accounts. These accounts were established and funded with Hanover's reserve funds. One of the accounts was opened in the name of Hanover Modern Construction Special Account. Without the consent and authorization of Hanover, **STEVENS** used his position as a bond claim attorney to direct the outside CPA firms to issue checks from these Hanover surety special reserve accounts to the bank accounts of third-party entities that **STEVENS** controlled, or were controlled by his friends or family members.

5. BoSpro was a third-party entity **STEVENS** controlled through his daughter C.M., with a business address located at 853 E. Lombard Street, Baltimore, MD.

6. In some instances, **STEVENS** directed the owners of these third-party entities to issue checks to **STEVENS** for his personal benefit. In other instances, **STEVENS** directed Hanover CPAs to issue checks made payable to entities that he controlled. Following both types of fraudulent transfers, **STEVENS** then used these funds to purchase luxury automobiles including a 2008 Maserati for $62,500 and a 2009 Mercedes for $30,000; to spend approximately $1,900,000 in funding for a NASCAR racing team; to pay cash gifts to friends; and to pay college tuition payments for his daughter.

7. In other instances, **STEVENS** directed the owners of these third-party entities to send funds to other payees, such as credit card companies on **STEVENS'** behalf, or to pay **STEVENS** directly.

8. The total loss to Hanover resulting from **STEVENS's** fraudulent scheme is $3,119,129.22.

## THE SCHEME TO DEFRAUD

9.  From in or about December, 2011, through and including November 2013, in the District of Maryland, and elsewhere,

**SALEH STEVENS,**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money from Hanover, to whom he owed a fiduciary duty of loyalty and trust, in the amount of $3,119,129.22, by means of false and fraudulent pretenses, representations, and promises (the "scheme to defraud").

## MANNER AND MEANS OF THE SCHEME TO DEFRAUD

It was a part of the scheme to defraud that:

10.  **STEVENS** established a business bank account for Bospro's at Suntrust bank account ending in 8522.

11.  **STEVENS** then directed Hanover CPAs to send embezzled funds from Hanover to BoSpro's Suntrust bank account, even though Hanover had never done actual business with BoSpro.

12.  **STEVENS** then used his daughter C.M. to access the embezzled funds, without explaining to her the source of the funds. For example, on April 4, 2013, **STEVENS** caused Hanover to write a check in the amount of $123,675 to BoSpro. **STEVENS** then directed his daughter to endorse the check, deposit it into the Suntrust business bank account, and provide **STEVENS** the funds for his personal use.

## THE CHARGE
(Mail Fraud)

1. The factual allegations contained in Paragraphs 1 through 12 of this Information are realleged and incorporated herein as if copied verbatim.

2. On or about January 4, 2013, within the District of Maryland and elsewhere, the Defendant,

### SALEH STEVENS,

for the purpose of executing the scheme and artifice to defraud and attempting to do so, did knowingly cause to be delivered by mail, according to the direction thereon, the following matter: an envelope, addressed to 853 E. Lombard Street, Baltimore, Maryland, the business address of BoSpro, containing Check No. 1043 from the Hanover Modern Construction Special Account in the amount of $279,596, which check was made payable to BoSpro, a company controlled by the Defendant, for the fraudulent purpose of using the funds for his own personal benefit, without the consent and authorization of The Hanover Insurance Company.

18 U.S.C. §1341

Date: 7/29/14

ROD J. ROSENSTEIN
United States Attorney